IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 24-MJ-232 (GMH) |
| v. | 18 U.S.C. § 111(a)(1) |
| NICHOLAS WALDON SMOTHERMAN, | |
| Defendant. | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Nicholas Waldon Smotherman, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police ("USCP"). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. This joint session of Congress was an official proceeding as that term is used in Title 18, United States Code, Section 1512. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the

building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

*The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. At approximately 2:28 p.m. on January 6, 2021, Washington, D.C. Metropolitan Police Department ("MPD") Sergeant B.G. and other MPD and USCP officers had formed a police

line on the West Plaza of the U.S. Capitol grounds behind bike racks set up to prevent unauthorized individuals from entering the plaza.

9. By 2:28 p.m., a large group of rioters had entered the U.S. Capitol grounds and amassed near the line of bike racks and USCP and MPD officers on the West Plaza. Members of the group of rioters chanted, climbed onto the media tower set up on the West Plaza, threatened officers, and threw items at officers.

10. Smotherman entered the U.S. Capitol grounds as part of a large group of rioters. On January 6, 2021, at all times while on the Capitol grounds, Smotherman was wearing body armor—specifically, a green MSA Paraclete Tactical Vest.

11. At approximately 2:28 p.m., a group of rioters near Sergeant B.G. began to breach the bike rack barriers and attempted to advance toward the Capitol building. In response, MPD and USCP officers gave commands for the rioters to get back and physically positioned themselves to prevent the rioters from advancing further.

12. At approximately 2:28:45 p.m., Smotherman moved toward the bike racks that had been breached seconds earlier by other rioters, and in the direction of Sergeant B.G. and other MPD and USCP officers.

13. As he approached the officers, Smotherman fell on a bike rack that had been knocked down by other rioters during the breach. After falling on the bike rack, Smotherman stood up and faced Sergeant B.G. Sergeant B.G. attempted to push Smotherman back to prevent him from advancing further. In response, at approximately 2:28:54 p.m., Smotherman moved toward Sergeant B.G. and forcibly shoved Sergeant B.G. As he did so, Smotherman made physical contact with Sergeant B.G.

14. At approximately 2:28:58 p.m., after Sergeant B.G. again attempted to push Smotherman back using his baton, Smotherman stood upright and yelled "hit me with it again" at Sergeant B.G. When Sergeant B.G. again attempted to push Smotherman back, Smotherman grabbed Sergeant B.G.'s baton and attempted to pull the baton away from Sergeant B.G. As he attempted to pull Sergeant B.G.'s baton away, Smotherman yelled "I'll fucking take this" and "come out here bitch." As he attempted to pull the baton away, Smotherman made physical contact with Sergeant B.G. again.

15. While grabbing onto Sergeant B.G.'s baton, Smotherman prevented Sergeant B.G. from using his baton to protect himself from Smotherman and other rioters.

16. Sergeant B.G. managed to prevent Smotherman from taking his baton. Smotherman then faced the USCP and MPD officers who were in front of him. After an officer in the group deployed pepper spray against Smotherman, Smotherman turned around and walked back into the crowd of rioters.

17. During the time when Smotherman assaulted Sergeant B.G. and attempted to take Sergeant B.G.'s baton, multiple other rioters in close proximity to Smotherman and Sergeant B.G. violently assaulted other MPD and USCP officers. Smotherman's assault of Sergeant B.G. occurred while rioters across the West Plaza were breaching the bike racks and police line in multiple locations and advancing toward the Capitol building. The large group of rioters overran and overwhelmed the outnumbered officers on the West Plaza.

18. During Smotherman's assault of Sergeant B.G. on the West Plaza, he acted with the intent to commit another felony, specifically, civil disorder, in violation of 18 U.S.C. § 231(a)(3).

19. After rioters overran the police line on the West Plaza, police officers retreated to the Lower West Terrace. Some officers entered the U.S. Capitol building through the Lower West Terrace Door. A large crowd of rioters then gathered in and around the entrance to the Lower West Terrace Door, sometimes referred to as "the tunnel."

20. Smotherman joined the group of rioters that advanced from the West Plaza to the Lower West Terrace. At approximately 2:56 p.m., Smotherman entered the tunnel. At that time, there was a large group of rioters in the tunnel. Smotherman observed other rioters in the tunnel assaulting officers and attempting to enter the U.S. Capitol building.

21. At approximately 2:58 p.m., Smotherman exited the tunnel and positioned himself near the north side of the entrance to the tunnel.

22. Smotherman subsequently walked north onto the bleachers that overlooked the Lower West Terrace, where he used his cell phone to take pictures or record video.

### *Elements of the Offense*

23. The parties agree that Assaulting, Resisting, or Impeding Officers in violation of 18 U.S.C. § 111(a)(1) requires the following elements:

  a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Sergeant B.G., an officer from the Metropolitan Police Department;

  b. Second, the defendant did such acts forcibly;

  c. Third, the defendant did such acts voluntarily and intentionally;

  d. Fourth, Sergeant B.G. was assisting officers of the United States who were then engaged in the performance of their official duties; and

e. Fifth, the defendant made physical contact with Sergeant B.G. or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to a violation of 18 U.S.C. § 231(a)(3).

*Defendant's Acknowledgments*

24. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he forcibly, voluntarily, and intentionally assaulted, resisted, opposed, impeded, intimidated, or interfered with MPD Sergeant B.G. on the West Plaza, and that, at the time, Sergeant B.G. was engaged in the lawful performance of his official duties and was assisting officers of the United States who were then engaged in the performance of their official duties. The defendant further admits that he made physical contact with Sergeant B.G. and acted with the intent to commit another felony, specifically, an act of civil disorder, in violation of 18 U.S.C. § 231(a)(3).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ *Terence A. Parker*
Terence A. Parker
Trial Attorney (Detailee)
Office: (202) 252-7958
Cell:   (202) 803-1600
Email: Terence.Parker3@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Nicholas Waldon Smotherman, have read this Statement of the Offense and have discussed it with my attorneys. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 11-22-2024

Nicholas Waldon Smotherman
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 11/22/2024

Will Allensworth
Caryll S. Alpert
Attorneys for Defendant